### H. B. EARHART, INC., *v.* HAW.

1. LANDLORD AND TENANT—LEASE BY STREET NUMBER.

   Lease of house or store building by street number includes only so much of lot on which building stands as is necessary for complete enjoyment of building for purpose for which it was let.

2. SAME—LEASE BY STREET NUMBER FOR REAL ESTATE OFFICE DID NOT INCLUDE REAR LOT.

   Lease of store building by street number to be used as real estate and general contracting office, did not include vacant lot to rear facing on two streets, one of which was important business street.

As to what property included in lease of premises described by street number, see annotation in 8 A. L. R. 673.

3. SAME.
> That landlord wrote tenant asking consent to move sign on vacant lot to rear, would give tenant no rights therein where he had none under unambiguous lease.

4. SAME—REVOCABLE LICENSE.
> Erection by tenant, without objection by landlord, of sign on rear lot, to which tenant had no right under lease, would give him no more than revocable license.

Error to Wayne; Keidan (Harry B.), J. Submitted April 7, 1930. (Docket No. 161, Calendar No. 34,812.) Decided June 2, 1930.

Summary proceedings in ejectment by H. B. Earhart, Inc., a Michigan corporation, against Thomas Haw, doing business as Haw Construction Company, before circuit court commissioner. From a judgment of restitution for plaintiff, defendant appealed to circuit court. From a judgment on directed verdict for plaintiff, defendant brings error. Affirmed.

*Goodenough, Voorhies, Long & Ryan,* for plaintiff.

*John R. Rood,* for defendant.

BUTZEL, J. Henry W. Smith, in October, 1925, leased to defendant Thomas Haw a building in Detroit for a term of five years. The lease briefly described the premises as a "store located at 11033 Grand River Avenue," and the purpose for which the store was to be used as "real estate and general contracting office." The store, approximately 20 feet wide and 40 feet deep, consists of the southerly half of a one-story building 40x40 feet. The northerly half of the building is occupied by another tenant. The building was erected on the westerly side of a narrow plot which was formerly of the shape of a right-angle triangle, from which subsequently

the most acute angle was taken by the city of Detroit for street purposes. The altitude of the triangle thus shortened is 117 feet in length and faces on Grand River avenue; the base is 87.30 in length and faces on Northlawn avenue; the hypotenuse is 134.9 feet in length and faces on Plymouth road. The one-story building is on the most westerly corner of Grand River and Northlawn avenues. On account of its shallowness there is considerable vacant space left between the rear of the building and Plymouth road. This space is not fenced in. It is surfaced with hard clay. The rear or southerly side of the store building occupied by defendant faces Plymouth road, which is about 15 feet from the east end of the building and about 25 feet from the west end. There is thus a fairly large-sized plot of vacant ground left adjoining the rear of the store building, and fronting on Plymouth road and Northlawn avenue. Both Grand River avenue and Plymouth road are very busy arterial highways and business streets, and the corner is a valuable one. There is a narrow rear door to the store building. Defendant at times parked his car on the vacant lot. Some eight months after entering into the lease, defendant erected a large advertising sign, 8½ x 6 feet, supported by planks, on the ground of the vacant lot, at such an angle that it could be readily seen for some distance by persons traveling on Plymouth road. A number of years later, the White Star Refining Company purchased the entire premises, including the adjoining property, where they have erected a gasoline station. The name of the White Star Refining Company was changed by appropriate corporate action to that of plaintiff. The refining company wrote defendant in September, 1928, reminding him of the fact that he was in arrears with his rent, and also asking for his con-

sent to their placing their own advertising sign at the rear of the store and setting their coal bin against the store. Not receiving any reply to the letter, they removed defendant's sign and placed it in a position not so advantageous, and fastened it so insecurely that it was blown over shortly thereafter. Defendant refused to pay any further rent, claiming that he was entitled to the rear lot under his lease, and that plaintiff's conduct amounted to a partial eviction, which released him from further payment of rent, and justified him in continuing to occupy the premises without any obligation to pay rent. Plaintiff brought suit in summary proceedings in ejectment before a circuit court commissioner and recovered a judgment. On appeal to the circuit court, on a directed verdict, plaintiff again prevailed. This case is before us on a writ of error.

The lease of a house by street number includes only so much of the lot on which the building stands as is necessary for the complete enjoyment of the building for the purpose for which it was let. It includes nothing more. *Kuschinsky* v. *Flanigan*, 170 Mich. 245 (41 L. R. A. [N. S.] 430, Ann. Cas. 1914 A, 1228); *Meredith* v. *McCormick*, 208 Mich. 563 (8 A. L. R. 669). This would also be true of a store building. Certain elements would have to be considered in each case. It would make some difference whether the rear lot was fenced in or not; whether it was situated in a sparsely settled community; whether the purpose of the business was such that would necessitate the use of such vacant space in the rear, as for the shipment and delivery of goods by the lessee of the store; whether the rear lot fronted on an alley or a street; whether the street was an important one; whether the rear of the store fronted on a corner lot; what the lease itself provided; whether there were other stores whose ten-

ants might also claim the rear lot. In the present instance the rear lot fronted on two streets, one of which was an extremely important one, the value of such space for both business and advertising purpose being admitted. The language of the lease is unambiguous. The lease simply covered the store building, and the fact that it did not call for more is significant. The building was rented as an office, the nature of which would not call for shipments or delivery of goods by vehicles. No claim is made that plaintiff at any time obstructed ingress or egress through the rear door of the store. Some claim is made that some iron barrels were moved. The lot was not a necessary appurtenance to the use of the store. While the fact that plaintiff wrote to defendant asking consent before removing the sign would be helpful in construing the wording of the description in the lease, no ambiguity exists in this case. The fact that eight months after entering into the lease defendant erected a sign on the lot, and plaintiff's grantor made no objection, would give defendant nothing more than a revocable license under the circumstances.

There is no question in this case as to the right-of-way to the rear door or other easement necessary to the enjoyment of the premises. As was said in *Hosher* v. *Hesterman*, 58 Ill. App. 265, 267:

"It has been held that a demise of premises by street numbers of residences which form the main or principal feature of the lease, included and carried stables situated on the rear end of the lots on which the residence stood. *Armstrong* v. *Crilly*, 51 Ill. App. 504; same case, 152 Ill. 646 (38 N. E. 936).

"But we do not regard such a rule as applicable to a corner lot in the business portion of a large city, occupying a considerable frontage on two

streets and occupied by both business and dwelling houses separate and distinct from each other, and fronting and opening upon different streets. In such a case the rule stated in *Patterson* v. *Graham,* 140 Ill. 531 (30 N. E. 460), is better adapted, that all that can be claimed is 'that by construction the lease carried so much of the lot on which said building stood as was necessary to the complete enjoyment of the building for the purpose for which it was rented,' and nothing more.''

The circuit judge further held that the mere moving of the sign and a coal bin and some empty barrels would, at most, amount to a trespass and not to a partial eviction. We need not discuss this point, inasmuch as the rear lot was not covered by the lease, and the defendant was not denied free ingress and egress to and from the street by way of the rear door of the store.

Judgment for plaintiff is affirmed, with costs.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.